(172 P.3d 42)
No. 97,556

TRAVIS WILLIAMS, *Appellant,* v. AUSTIN DESLAURIERS, Clinical Director, and LEO HERRMAN, Program Director, *Appellees.*

Opinion filed September 7, 2007.

*Sam S. Kepfield,* of Hutchinson, for appellant.

*C. William Ossmann,* chief litigation attorney, Kansas Department of Social and Rehabilitation Services, and *Danny J. Baumgartner,* of Kansas Department of Social and Rehabilitation Services, for appellees.

Before HILL, P.J., GREEN and GREENE, JJ.

GREEN, J.: Travis Williams appeals from the trial court's summary dismissal of his K.S.A. 60-1501 petition. On appeal, Williams contends that the lack of a formal disciplinary procedure in the Sexual Predator Treatment Program (SPTP) at the Larned State Hospital denied him due process under the 14th Amendment to the United States Constitution. Because Williams' complaint concerning a lack of a disciplinary procedure in the SPTP to protect his due process rights involves an agency action and is controlled by the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.,* we determine that Williams brought his action in the wrong forum. As a result, we determine that the trial court correctly held that it lacked jurisdiction to consider this action. Further, assuming arguendo that this is the proper forum for Williams' 60-1501 petition, we determine

that Williams has failed to allege in his petition shocking or intolerable conduct or continuing mistreatment of a constitutional stature sufficient to afford him relief under habeas corpus. Accordingly, we dismiss.

In August 2003, Williams was committed to the SPTP at the Larned State Hospital. On February 12, 2006, Williams' room was searched and several adult DVD movies that were rated X were seized. On February 15, 2006, Williams was called to a meeting with the SPTP treatment team where he was told that he was being reduced to a Level 1 in the program. Williams was told that he would have to retake several "Core Phase" classes. Williams alleges that he was also told that he had to disclose who gave him the adult movies, how the movies got into the facility, and the names of any other individuals he knew who had adult movies. Williams was told that he would not get his privileges back unless he cooperated with these conditions. Nevertheless, Williams refused to disclose any of the requested information.

According to Williams, it was revealed during an investigation of another resident that the movies seized from Williams actually belonged to another resident and that a staff member had brought the movies into the facility for that resident. Williams alleged that he had to meet with the SPTP treatment team again to tell them his story and take a polygraph test to ensure that he was telling the truth. Williams was told that this was to help the SPTP treatment team with their investigation.

Williams sent a letter titled "Grievance" to Eric Fox, the director of consumer relations for the Larned State Hospital, detailing the above facts. Williams alleged that he had been deprived of his property, his job, and his wages. Moreover, Williams argued that the use of the polygraph for investigative purposes was improper and illegal. Fox responded to Williams' grievance in a written letter dated April 12, 2006, stating that he had investigated Williams' claim. Fox noted that it was the consensus among different departments across campus that it was allowable to have him take the polygraph test. Fox advised Williams to participate with the treatment team's plans in order to progress through the levels of the SPTP.

In May 2006, Williams filed his K.S.A. 60-1501 petition. Williams alleged that his property, privileges, and job were taken and that more restrictive living conditions were imposed on him without due process of law. Specifically, Williams alleged that a disciplinary procedure had not been established within the SPTP program that provided for the following: (1) that a resident is entitled to receive advance written notice of the charges against the resident at least 24 hours before the disciplinary hearing; (2) that the factfinder shall prepare a written statement setting out the evidence relied upon and the reason for the disciplinary action; and (3) that the resident is entitled to call witnesses and to present documentary evidence in the resident's defense. Williams requested that the trial court grant the following relief: (1) order that Williams be reinstated to phase level 3; (2) restrain the appellees from reducing Williams' phase level until constitutional procedures for disciplinary hearings and the opportunity for appeal had been established; and (3) order the establishment of a patient rule book that listed the precise violations and penalties, the policy and procedures outlining processes for a hearing, the right to have a legal or staff representative through every step of the hearing process, and the process for an appeal.

The appellees, Austin DesLauriers (the Clinical Director of the SPTP program) and Leo Herrman (the Program Director of the SPTP program), moved to dismiss Williams' action. The trial court held a nonevidentiary hearing in July 2006. The trial court determined that to the extent that Williams was seeking declaratory or injunctive relief, the provisions of the KJRA provided the exclusive means by which the court could provide such relief. Therefore, the trial court dismissed Williams' case seeking declaratory relief under K.S.A. 60-1701 *et seq.*, which is the Uniform Declaratory Judgments Act adopted in 1993. Moreover, the trial court found that Williams had failed to allege or show that the actions complained of in his K.S.A. 60-1501 petition were incompatible with the legitimate treatment team goals related to the discipline and behavior modification and the treatment of patients committed to the SPTP. Accordingly, the trial court granted the appellees' motion to dismiss.

*Did the trial court err in summarily dismissing Williams' K.S.A. 60-1501 petition?*

On appeal, Williams argues that the trial court erred in dismissing his K.S.A. 60-1501 petition without holding an evidentiary hearing. This court's standard of review over a trial court's summary dismissal of a K.S.A. 60-1501 petition is well established:

"K.S.A. 60-1503 authorizes the summary dismissal of a habeas corpus petition if it plainly appears from the face of the petition and any exhibits attached thereto that the plaintiff is not entitled to relief in the district court. To avoid summary dismissal the allegations must be of a constitutional stature. In determining if this standard is met, courts must accept the facts alleged by the inmate as true. If a violation of due process is alleged, a question of law is raised over which an appellate court has unlimited review." *Hogue v. Bruce,* 279 Kan. 848, Syl. ¶ 1, 113 P.3d 234 (2005).

The SPTP civil commitment statute is narrowly drawn to serve the State's compelling interest in treating sexual predators and protecting society from their inappropriate behavior. Because Williams had been determined to be a sexually violent predator under the SPTP civil commitment statute, he was committed to the custody of the Secretary of Social and Rehabilitation Services for the following purposes: "for control, care and treatment until such time as [his] mental abnormality or personality disorder has so changed that [he] is safe to be at large." K.S.A. 2006 Supp. 59-29a07. Moreover, Williams was required to receive his "control, care, and treatment" in a facility operated by the Department of Social and Rehabilitation Services (SRS). See K.S.A. 2006 Supp. 59-29a07.

In his brief, Williams makes a disjunctive argument: "[T]he failure to establish a disciplinary procedure at the [SPTP] violated [Williams'] rights to due process. This is the crux of the entire case—whether his due process rights are to be held in primary regard, or whether the 'legitimate treatment team decisions or medical decisions' trump them." A true disjunctive argument is one which expresses a choice between two exclusive alternatives. To omit a possible alternative renders the argument suspect and its conclusion unacceptable. Williams' argument does not contain a true disjunction because it fails to mention a third alternative: that

the SPTP's due process procedure, though sketchy, furnished Williams with a remedy for adequate relief.

We note that Williams fails to allege that no administrative remedy existed under the SPTP. In fact, the record indicates that Williams participated in a grievance procedure. Nevertheless, we have been handicapped in reviewing this grievance procedure because neither party has included, in the record, a copy of the grievance procedure. This is significant because a petitioner must have exhausted available administrative remedies before seeking judicial review under a K.S.A. 60-1501 proceeding. *Fletcher v. Nelson,* 253 Kan. 389, Syl. ¶ 3, 855 P.2d 940 (1993).

The record does show that Williams filed a grievance with Eric Fox, the director of consumer relations for the Larned State Hospital. The record also indicates that both Fox and the SPTP treatment team investigated Williams' grievance. The record shows that Williams was encouraged to cooperate with the investigation. Finally, the record indicates that Williams refused to cooperate in the investigation. Nevertheless, because we agree with the trial court that this issue was brought in the wrong forum, as discussed later in this opinion, it is not necessary to address this issue further.

*Declaratory Judgment*

At the nonevidentiary hearing in this case, Williams' counsel clarified that part of Williams' request in his K.S.A. 60-1501 petition was for a declaratory judgment that the SPTP needed to establish procedures comporting with due process requirements. Thus, a resident involved in a similar situation in the future would be given a hearing, notice of the action, and an opportunity to prepare a response. Nevertheless, the trial court found that in order for Williams to pursue that type of claim, he was required to pursue relief under the KJRA.

*Exclusive Means of Review*

The KJRA applies to all agencies and all proceedings for judicial review and civil enforcement of agency actions that are not specifically exempted by statute. K.S.A. 2006 Supp. 77-603(a); *Heiland v. Dunnick,* 270 Kan. 663, 668, 19 P.3d 103 (2001). "The KJRA is

the exclusive remedy for all requested relief which an agency can grant under its authority. Only actionable claims which fall outside the authority of an agency to grant can support a separate action by an aggrieved party." *Douglass v. Kansas State University*, 22 Kan. App. 2d 171, 174, 915 P.2d 782, *rev. denied* 259 Kan. 927 (1996).

Williams' complaints about a lack of a formal disciplinary procedure for the SPTP program would come under an agency action. K.S.A. 77-602(b) defines an "agency action" as follows: "(1) The whole or a part of a rule and regulation or an order; (2) the failure to issue a rule and regulation or an order; or (3) an agency's performance of, or failure to perform, any other duty, function or activity, discretionary or otherwise." SRS is the agency charged with the control, care, and treatment of sexually violent predators.

Here, Williams is seeking a declaratory judgment or an injunction against SRS because of SRS's alleged failure to establish a formal disciplinary procedure for the SPTP. This type of relief would fall under K.S.A. 77-602(b)(2) or (3): "the failure to issue a rule and regulation or an order; or . . . an agency's performance of, or failure to perform, any other duty, function or activity, discretionary or otherwise." K.S.A. 77-606 states that the KJRA is "the exclusive means of judicial review of agency action."

Furthermore, K.S.A. 77-622(b) of the KJRA allows a court to do the following:

"The court may grant other appropriate relief, whether mandatory, injunctive or declaratory; preliminary or final; temporary or permanent; equitable or legal. In granting relief, the court may order agency action required by law, order agency exercise of discretion required by law, set aside or modify agency action, enjoin or stay the effectiveness of agency action, remand the matter for further proceedings, render a declaratory judgment or take any other action that is authorized and appropriate."

As the appellees point out, the KJRA allows the court to grant relief (including declaratory and injunctive relief) if it determines that the agency action is unconstitutional (K.S.A. 77-621[c][1]); or if the agency has engaged in an unlawful procedure (K.S.A. 77-621[c][5]); or if the agency action was otherwise unreasonable, arbitrary, or capricious (K.S.A. 77-621[c][8]). Because Williams has

failed to file his action under the KJRA, his action is in the wrong forum.

*Due Process Clause*

Although we have determined that Williams should not have bypassed the KJRA in bringing his due process claim, we will consider whether Williams, under any circumstances, could have properly bypassed the KJRA in bringing his due process claims. In fact, the trial court found that with respect to Williams' claim that his due process rights were violated, the KJRA was not the exclusive vehicle for Williams to present his claims. K.S.A. 60-1501(a) states:

"Subject to the provisions of K.S.A. 60-1507, and amendments thereto, any person in this state who is detained, confined, or restrained of liberty on any pretense whatsoever, and any parent, guardian, or next friend for the protection of infants or allegedly incapacitated or incompetent persons, physically present in this state may prosecute a writ of habeas corpus in the supreme court, court of appeals or the district court of the county in which such restraint is taking place. No docket fee shall be required, as long as the petitioner complies with the provisions of subsection (b) of K.S.A. 60-2001 and amendments thereto."

Under K.S.A. 60-1501, "any person" who is confined in Kansas may prosecute a writ of habeas corpus in the county in which such restraint is taking place. Based on the broad language of K.S.A. 60-1501, it seems that the trial court was correct in determining that an individual confined in the SPTP program could bring a habeas corpus petition alleging due process violations. See *In re Jones*, 228 Kan. 90, 104-05, 612 P.2d 1211 (1980) (recognizing that if chief medical officer of state security hospital, where individuals are committed, should fail to perform duties, safeguard of habeas corpus action under K.S.A. 60-1501 is available to committed person whose rights are adversely affected thereby). Nevertheless, even if Williams properly filed his due process claims under K.S.A. 60-1501, he cannot prevail as his allegations do not rise to a constitutional stature sufficient to provide him relief under habeas corpus.

The 14th Amendment to the United States Constitution states that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." Procedural due process

questions are examined in two steps. The first step is to determine whether the State has deprived the individual of life, liberty, or property. If there has been a deprivation of life, liberty, or property due to State action, the second step is to determine the extent and nature of the process due. *Hogue*, 279 Kan. at 850-51; see *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 104 L. Ed. 2d 506, 109 S. Ct. 1904 (1989). The process requirement necessary to establish 14th Amendment procedural due process comes into play only after a plaintiff has shown that he or she has a protected property or liberty interest. See *Murphy v. Nelson*, 260 Kan. 589, 598, 921 P.2d 1225 (1996).

Protected liberty interests arise from two sources: (1) the Due Process Clause; and (2) the laws of the states. *Shepherd v. Davies*, 14 Kan. App. 2d 333, 335, 789 P.2d 1190 (1990). " ' "A State creates a protected liberty interest by placing substantive limitations on official discretion." [Citation omitted.]' " *Davis v. Finney*, 21 Kan. App. 2d 547, 554, 902 P.2d 498 (1995) (quoting *Thompson*, 490 U.S. at 462). In order to constitute a protected liberty or property interest for 14th Amendment purposes, an individual must have a legitimate claim of entitlement to it. The interest must be more than an abstract need or desire and more than a unilateral expectation. *Murphy*, 260 Kan. at 598; *Davis*, 21 Kan. App. 2d at 553-54.

Here, Williams seemed to argue that he suffered a deprivation of his property when the SPTP treatment team seized the movies from his room. Nevertheless, in his letter to Fox, Williams pointed out that the movies actually belonged to another resident of the SPTP program. Because the movies were not his property, the team members did not infringe upon any "protected property interest" of Williams by seizing the movies.

Williams also argued that he suffered a deprivation of his liberty by having his phase level reduced from a level 3 to a level 1. Williams maintained that as a result of the reduction in his phase level, he had fewer privileges and more restrictive living conditions and had lost his job through the SPTP program. Williams contended that his due process rights were violated because there was no

formal disciplinary procedure in place similar to that used by the Kansas Department of Corrections in a disciplinary proceeding.

Our research has revealed no cases in Kansas, that have addressed a similar argument for an individual committed to the SPTP program. Nevertheless, in cases involving a prison inmate, our Supreme Court and this court have held that an inmate's custody classification does not involve a liberty interest. In *Bankes v. Simmons*, 265 Kan. 341, 351, 963 P.2d 412, *cert. denied* 525 U.S. 1060 (1998), our Supreme Court held that an inmate's custody classification, the housing assignment given to an inmate, spending limitations at a canteen, regulation of visiting hours, and regulation of other daily activities that are not atypical and do not pose a significant hardship within a prison do not involve a liberty interest. Moreover, in *Lile v. Simmons*, 23 Kan. App. 2d 1, 929 P.2d 171 (1996), this court held that the appellant inmate had no liberty interest in receiving minimum security status and refused to review the Department of Corrections' decision to maintain the inmate's medium security status.

Here, Williams has not shown that he had a protected liberty interest in being on a particular phase level of the SPTP program. As a person who had been determined to be a sexually violent predator and had been civilly committed to the control, care, and treatment of SRS, Williams needed to show that he was subjected to some loss of liberty that was beyond the normal circumstances of confined treatment. The alleged actions by the SPTP treatment team were part of Williams' treatment plan as a sexually violent predator.

First, a legitimate purpose for confinement of an SPTP resident is to prevent the resident from having access to sexually explicit materials. These materials could adversely affect the resident's treatment plan. As a result, the seizures of such materials is necessary to both treat and protect the resident and to protect others. Second, a resident's status and privileges in the SPTP are expressly conditioned on the resident's compliance with the rules and the policies of the SPTP. As a result, the actions by the SPTP staff in reducing Williams' treatment phase level are not of such a stature as to infringe on Williams' constitutional rights.

Recognizing that this case differs from one brought by a prison inmate because this case involves a civil commitment, the trial judge stated:

"I think all parties acknowledge that the Department of Corrections does have an elaborate procedures [*sic*] in place for not only administrative remedies, but the types of due process procedures that must be followed at any sort of disciplinary hearing. I don't think that there is serious dispute by any of the parties that this is a civil case and that the extent of those protections would be lesser in a civil commitment proceeding than in a proceeding in the Department of Corrections, where potentially you're looking at a loss of good time credit or other loss of specific liberty interests."

The trial court then compared Williams' confinement to a civil commitment under the mental illness code:

"In comparing this civil commitment procedure to the normal civil commitment procedure under the mental illness code, the Court would note that the treatment team in those instances has free leave for a person that is mentally ill, which would also apply to the findings made for Mr. Williams in this case, to seclude an individual for reasons of inappropriate behavior, to take away privileges or to grant privileges, in terms of a behavior modification program, and to generally provide as a treatment team decision the type of confinement or privilege confinement that an inmate may have."

The trial court found that the SPTP treatment team had imposed the discipline or behavior modification in Williams' case as a part of a valid treatment program or valid treatment interest. We agree. The SPTP staff must have the authority to confiscate sexually explicit materials from an SPTP resident and to take away privileges from the resident when inappropriate materials are discovered in the resident's possession. This allows the SPTP staff to fulfill the SPTP civil commitment statute's dual purpose of treatment and protection of society.

In *Bankes*, 265 Kan. at 349, our Supreme Court noted that proceedings on a K.S.A. 60-1501 petition are not subject to the ordinary rules of civil procedure. To avoid summary dismissal, a K.S.A. 60-1501 petition must allege shocking and intolerable conduct or continuing mistreatment of a constitutional stature. In this case, Williams' allegations do not rise to the level of "shocking and intolerable," nor does Williams show "continuing mistreatment of a constitutional stature." The trial court was correct in determining

that Williams had failed to show that the actions complained of in his K.S.A. 60-1501 petition were incompatible with the legitimate treatment goals related to the discipline and behavior modification and the treatment of patients committed to the SPTP.

Because Williams cannot establish a constitutional claim sufficient to provide him relief under habeas corpus, his K.S.A. 60-1501 petition was properly dismissed.

Appeal dismissed.