NOT DESIGNATED FOR PUBLICATION

No. 118,250

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BOBBY WHITE,
*Appellant*,

v.

REX PRYOR, Warden, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed July 20, 2018. Affirmed.

*Rhonda K. Levinson*, of Perry and Trent, L.L.C., of Bonner Springs, for appellant.

*Sherri Price*, legal counsel, of Lansing Correctional Facility, and *Roger W. Slead*, of Horn, Aylward & Bandy, LLC, of Kansas City, Missouri, for appellees.

Before MALONE, P.J., BUSER and GARDNER, JJ.

PER CURIAM: Bobby White, an inmate at the Lansing Correction Facility (LCF), appeals the district court's dismissal of his petition for habeas corpus relief under K.S.A. 60-1501. White contends the district court erred by dismissing his claims of taking property without due process, inadequate medical treatment, and harassment and retaliation. Upon our review, we affirm the district court's dismissal of White's K.S.A. 60-1501 petition.

1

On March 14, 2016, White filed a pro se K.S.A. 60-1501 petition contending that certain conditions of incarceration violated his constitutional rights. After counsel was appointed to represent him, White filed a third amended K.S.A. 60-1501 petition.

White raised four claims in his third amended petition. First, he alleged his rights as a grandparent were violated during his underlying criminal trial. Second, White argued that the Kansas Department of Corrections (KDOC) denied him proper medical treatment. In this claim, White alleged that prison staff had forced him to take inappropriate medications, misclassified his medical status, failed to properly treat a spider bite, and failed to provide him medically issued tennis shoes.

In White's third claim, he asserted KDOC violated his due process rights by depriving him of his property. White stated that, upon his transfer to LCF, he was ordered to remove his electronics from the facility or they would be destroyed. Prison staff then told White that he was required to sign a document stating that he received all of his property to receive any of his property. When White refused to sign for his property, he was denied the clothing, writing materials, art supplies, and items necessary for hygiene. White also said he was denied his medically issued cane and tennis shoes.

In his fourth claim, White asserted that KDOC allowed its employees to harass and retaliate against him. The factual details of White's claims are more fully discussed in this opinion.

In response to White's petition, Warden Rex Pryor filed a motion to dismiss. Pryor contended the allegations relating to medical issues were untimely and that White failed to exhaust his administrative remedies on the claims of harassment and retaliation. Pryor asserted there was no evidence to support the due process claim because White noted no

2

missing items when he signed for his property and White was not allowed to possess electronics.

The district court held a hearing on Pryor's motion to dismiss. In addressing the due process claim, Pryor asserted that White did not receive his property because he refused to comply with the proper procedures. Pryor said that once White signed the required paperwork, he was provided with his property and there was no evidence of any other issues regarding White's property. In response to Pryor's argument, White pointed out that he initially refused to sign the paperwork because he was not receiving all of his property back. White claimed he subsequently signed the paperwork under duress. As a result, White argued that his claims involved factual issues which made the motion to dismiss inappropriate.

After the hearing, the district court granted Pryor's motion to dismiss. The district court first determined that White's claim of grandparent rights did not relate to his current restraint by Pryor and, thus, dismissed the first count. The district court then dismissed White's medical treatment claim, reasoning:  (1) the claims were untimely and (2) White "failed to show shocking conduct or a deliberate indifference to [his] medical needs."

Turning to White's due process claim, the district court found that White "eventually received his property except as regulations would permit." As a result, the district court determined that KDOC did not withhold White's property in violation of his due process rights and dismissed that claim. Finally, the district court dismissed White's claims of harassment and retaliation, finding that White failed to exhaust his administrative remedies. In summary, the district court granted the motion to dismiss White's K.S.A. 60-1501 petition. White appeals.

3

ANALYSIS

On appeal, White contends the district court erred by summarily dismissing his K.S.A. 60-1501 petition. White argues the district court should have held an evidentiary hearing on his due process claim, his medical treatment claim, and his claims of harassment and retaliation.

To state a claim for relief under K.S.A. 60-1501, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). "[I]f, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists," then summary dismissal is proper. 289 Kan. at 648-49; see K.S.A. 2017 Supp. 60-1503(a). An appellate court exercises unlimited review of a summary dismissal. 289 Kan. at 649.

White does not challenge the dismissal of his grandparent rights claim. Because White did not brief this issue on appeal, it is considered abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). We will separately address White's challenges to the summary dismissal of his remaining claims.

*Due Process Claim*

White's due process claim arises from his transfer to LCF in January 2016. Before his transfer, White owned several items, including a personal television, other electronics, clothes, art supplies, and a pair of tennis shoes. But because White's incentive level had been reduced to level I for the second time in five years, he was no longer permitted to possess certain electronics and they were to be removed from the facility. As a result, White was not allowed to take possession of his electronics upon his transfer to LCF.

4

Since White's electronics had to be removed, the prison staff created property disposition slips that allowed White to designate how he wanted to dispose of the electronics. But White did not fill out either the first property disposition slip dated January 13, 2016, or a subsequent property disposition slip dated January 20, 2016. White's electronics were donated by the facility on January 29, 2016, because he failed to provide a method of disposal.

When he arrived at LCF, White refused to sign an inmate personal property inventory certifying that the inventory listed was correct. However, White ultimately signed the property inventory on February 10, 2016, certifying that the property listed was returned to him on that date. The property inventory included a pair of white New Balance shoes and art supplies.

Before signing the property inventory, White filed a grievance (2016 hygiene grievance) with the LCF prison authorities. In this grievance, White alleged that he was denied clothing and hygiene items. Pryor responded to the grievance by stating that White was issued a hygiene pack and noted:

> "The reason you have been without property is that you refused to sign for your property when you were notified that your electronics were being withheld because of your reduction to level 1. When you refused to sign for your property, you also refused to receive your clothing from A&D and simply left the area. If you had signed for your property and picked up your clothing when given the opportunity to do so, your clothing and hygiene items would have been in your possession within a day of your arrival. After repeated attempts to have you . . . sign for your property, you finally did so yesterday and your property was issued to you."

After receiving Pryor's response to the 2016 hygiene grievance, White appealed the decision to the Secretary of Corrections. On March 22, 2016, the Secretary of

5

Corrections responded to White's appeal, noting that "[i]t appears some things were misplaced during the offender's transfer to LCF."

While the 2016 hygiene grievance was being addressed, White also made a property loss claim. In his property loss claim, White alleged that several items were missing when he received his property, including his level-restricted electronics, a pair of tennis shoes, a padlock, and art supplies. White requested $426 as reimbursement for the purported property loss.

The officer who investigated White's property claim noted that White's level-restricted electronics were donated after he refused to respond to the two property disposition slips. The investigating officer also concluded that "[a]ll the remaining items were issued to him, with the exception of a padlock, which was not allowed in the [maximum custody area]. This item was subsequently issued to him after he was transferred to the [m]edium [custody area], where they are allowed." As a result, the investigating officer recommended disapproving White's property loss claim. After the warden also recommended disapproving the property loss claim, White appealed to the Secretary of Corrections. On April 13, 2016, the Secretary of Corrections disapproved White's property loss claim.

In addition to the above complaints, White filed another grievance (2016 shoe grievance). In this grievance, White complained that his medically issued tennis shoes were not returned to him, that medical staff would not issue him replacement tennis shoes, and his padlock was not returned to him. A unit officer responded to this grievance by noting that White subsequently received the padlock and wrote, "[Y]ou signed for a pair of white New Balance Shoes according to your property inventory from 2-10-16." White forwarded the 2016 shoe grievance to Pryor. Following an investigation, Pryor determined that the response provided by the unit officer was appropriate. The Secretary of Corrections agreed.

Turning to this appeal, White contends the district court erred by dismissing his due process claim for two reasons. First, White argues an evidentiary hearing was necessary to address his allegations of lost property—his tennis shoes and art supplies—because whether KDOC lost his property was an issue of fact. Second, White claims that Pryor and KDOC violated his due process rights when disposing of his electronics.

The Fourteenth Amendment to the United States Constitution protects an individual's due process rights and prohibits the deprivation of a significant life, liberty, or property interest. *State v. Turner*, 300 Kan. 662, 683, 333 P.3d 155 (2014). Courts engage in a two-step inquiry to determine if a person was wrongfully deprived of his property. First, the court determines whether the person has a protected interest in the property; if the court finds such an interest and the individual was deprived of that interest, it then determines the extent of the process due. *State v. Wilkinson*, 269 Kan. 603, 609, 9 P.3d 1 (2000).

A person has a protected property interest in items to which he has a legitimate claim of entitlement. *Williams v. DesLauriers*, 38 Kan. App. 2d 629, 637, 172 P.3d 42 (2007). "Nevertheless, if there are constitutionally permissible limitations on the inmates' property rights which would invalidate the existence of a protectable interest in certain property, the deprivation of that property does not violate due process." *Bryant v. Barbara*, 11 Kan. App. 2d 165, 168, 717 P.2d 522 (1986). In this regard, "[p]rison officials are granted wide discretion in managing the internal operations of the prison." 11 Kan. App. 2d at 167.

Importantly, even if an inmate has a protected property interest in certain items, a negligent or unauthorized intentional deprivation of property "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). In *Hudson*, the

7

United States Supreme Court reiterated that when a property loss "is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure, the state cannot predict when the loss will occur." 468 U.S. at 532. Under these circumstances, a pre-deprivation hearing is not practicable and the Due Process Clause is satisfied if a meaningful post-deprivation remedy is available. 468 U.S. at 533.

An inmate grievance procedure can be an adequate post-deprivation remedy for an alleged deprivation of property. See 468 U.S. at 536 n.15. A violation of due process exists if the post-deprivation procedure is unresponsive or inadequate. See *Freeman v. Department of Corrections*, 949 F.2d 360, 362 (10th Cir. 1991). Much like this case, in *Coburn v. Wilkinson*, 700 Fed. Appx. 834 (10th Cir. 2017) (unpublished opinion), an inmate claimed his property was lost or stolen because of an improper inventory of his belongings. The Tenth Circuit held that the inmate received the full measure of due process to which he was entitled because the warden reviewed his claim, the inmate could appeal the warden's denial of his claim, and there was no evidence the grievance procedure was unresponsive or inadequate. 700 Fed. Appx. at 837.

We first consider White's arguments regarding his allegedly lost tennis shoes and art supplies. Since White claimed this property was lost, rather than taken through an established procedure, his due process rights were not violated if an adequate post-deprivation remedy was available.

The record shows that LCF adequately addressed White's property loss claim. The officer investigating White's claim was present when White received his property and noted that White was given extensive time to review the contents of the property before leaving the area. While looking into White's claim, the investigating officer interviewed an officer at Central Property. The Central Property officer said that only White's level-restricted electronics were removed and she had no knowledge of any art supplies or shoes missing from White's property. The investigating officer concluded that, aside from

8

the level-restricted electronics, the items listed on White's property inventory sheet were issued to him.

Following the investigating officer's recommendation to disapprove White's property claim, Pryor reviewed the claim. After Pryor denied White's property claim, White appealed to the Secretary of Corrections, who also denied the claim. In addition to his property loss claim, there was an investigation into White's 2016 shoe grievance. This grievance also was addressed and White was denied relief by the unit team, Pryor, and the Secretary of Corrections.

Accepting White's allegations as true, we find the property loss claim procedure provided an adequate post-deprivation remedy for the alleged deprivation of White's tennis shoes and art supplies. White does not show how the post-deprivation procedure was unresponsive or inadequate to address his claims. As a result, we determine that White received the full measure of due process to which he was entitled for his lost property.

Next, we consider White's argument that Pryor and KDOC violated his due process rights by donating his level-restricted electronics.

Under KDOC's Internal Management Policy and Procedure (IMPP) 11-101, because White returned to incentive level I for a second or subsequent time within a five-year period, the property items not authorized at his incentive level were to be removed from the facility. The regulations provide that property may be removed from the facility by mailing the property, donating the property to charity, destroying the property, having the property picked up by an authorized person, or having the property delivered to a local address by the facility. IMPP 12-120 § IX. That said, if the "offender refuses to designate an approved means of removal, the Warden or designee shall make the designation." IMPP 12-120 § IX.B.6.

9

Our Supreme Court has held that an inmate is not deprived of a property interest that implicates the Due Process Clause when the inmate's level-restricted property must be removed from the prison facility under IMPP 11-101. *Stansbury v. Hannigan*, 265 Kan. 404, 420, 960 P.2d 227 (1998). The *Stansbury* court found that when the level-restricted property must be removed, the inmate is merely denied possession, not ownership of the property because the inmate can send the items to an address or person of his own choosing. 265 Kan. 420.

In this case, two property disposition slips were created and White was asked to designate how he wanted the level-restricted property to be removed. The first slip was dated January 13, 2016, and provided that arrangements must be made by January 20, 2016. The second slip was dated January 20, 2016, and provided that if no arrangements were made by January 27, 2016, then the property would be disposed of in accordance with IMPP 12-120.

In his various petitions, White alleged that he did not receive or know about the property dispositions slips before his property was donated. Accepting this allegation as true, White could not designate a method to dispose of his property because the prison staff negligently failed to provide him with the property dispositions slips. Even so, White fails to demonstrate how the post-deprivation process was inadequate.

White used the available property claim and grievance procedures to have his claim investigated by the unit team and reviewed by Pryor and the Secretary of Corrections. In its investigation, the unit team found that "a property disposition slip was handed directly to [White]" and White never responded to either of the two disposition slips. After Pryor denied his claim, White filed an appeal which was also denied. Although White disagrees with the findings of fact and conclusions reached in the grievance process, he does not provide evidence that it was unresponsive or inadequate to support a violation of due process.

10

We are persuaded that the district court did not err by dismissing White's due process claim.

*Medical Treatment Claim*

Next, White contends the district court erred when it dismissed his medical treatment claim.

White's medical claim was based on allegations that staff forced him to take improper medications, his medical status was misclassified in May 2015, a spider bite in August 2015 was not properly treated, and he fell in June 2015 because he was not provided with medically issued tennis shoes. White's allegation concerning the improper medications was the subject of a grievance. The Secretary of Corrections made a final decision on this grievance on May 1, 2015.

An inmate must file his K.S.A. 60-1501 petition within 30 days from the date when the action for which review is sought was final, but that time can be tolled during the pendency of timely efforts by the inmate to exhaust his administrative remedies. See K.S.A. 2017 Supp. 60-1501(b). K.S.A. 2017 Supp. 60-1501(b) constitutes a 30-day statute of limitations, and an inmate's habeas petition not filed within that period is barred. See *Taylor v. McKune*, 25 Kan. App. 2d 283, 286, 962 P.2d 566 (1998).

Grievances must be filed within 15 days from the date of the discovery of the event supporting the grievance, but in no event later than 1 year after the event giving rise to the grievance. K.A.R. 44-15-101b. K.S.A. 75-52,138 requires an inmate in custody to exhaust the available administrative remedies before bringing an action with the district court and to file with the K.S.A. 60-1501 petition proof that administrative remedies have been exhausted. *Boyd v. Werholtz*, 41 Kan. App. 2d 15, 17, 203 P.3d 1 (2008). Our court

11

has required strict compliance with the exhaustion requirement. See *Laubach v. Roberts*, 32 Kan. App. 2d 863, 868-70, 90 P.3d 961 (2004).

White failed to satisfy the 30-day time limit of K.S.A. 2017 Supp. 60-1501(b) with regard to his improper medications allegation. The Secretary of Corrections made a decision on White's appeal on May 1, 2015. White did not file his K.S.A. 60-1501 petition until March 14, 2016, well beyond the 30-day statute of limitations.

Turning to White's remaining allegations of inadequate medical treatment, he fails to show that he exhausted his administrative remedies. The record shows that White received a final decision only on his improper medications allegation. As a result, White failed to comply with K.S.A. 75-52,138 by showing that he exhausted his administrative remedies.

Because White either failed to comply with the 30-day time limit or failed to demonstrate exhaustion of administrative remedies, the district court was without authority to consider White's medical treatment claim. White argues, however, that the district court should have considered this claim because KDOC's actions in failing to adequately provide medical care "were part of a continuing course of conduct." In support of his argument, White relies on *Tonge v. Simmons*, 27 Kan. App. 2d 1048, 1050, 11 P.3d 77 (2000), where our court held "[e]ven if the petitions were untimely, the respondents cannot be prejudiced by a complaint of allegedly unlawful prison conditions continuing to exist."

The holding in *Tonge* is inapplicable to the facts of this case. In *Tonge*, several inmates challenged the recurring garnishments of their prison accounts, arguing the garnishments prevented them from obtaining products necessary to maintain personal hygiene and health. Our court found the 30-day time limit did not bar the prisoners'

claims because the garnishments were reoccurring and continued to leave the inmates with insufficient funds to maintain personal hygiene and health. 27 Kan. App. 2d at 1050.

Unlike in *Tonge*, White's claims arise from separate and distinct alleged instances of deprived medical care. When a purported legal injury results from a distinct act, courts do not find a continuing violation. *Marshall v. Kansas Dept. of Corrections*, No. 112,026, 2015 WL 1636872, at *3 (Kan. App. 2015) (unpublished opinion) (listing cases). *Tonge* also is factually inapposite because, aside from the improper medications allegation, White never exhausted his administrative remedies.

We conclude that the district court did not err by dismissing White's medical treatment claim.

*Claims of Harassment and Retaliation*

White next contends the district court erred by dismissing his claims of harassment and retaliation. In his K.S.A. 60-1501 petition, White raised many instances in which employees allegedly harassed him or acted out of retaliation. For example, White argued that he was issued disciplinary reports in retaliation for complaints about medical treatment, he was placed in administrative segregation without cause, and he was denied access to his property because he complained about his conditions in administrative segregation. However, as with his medical treatment claim, White failed to either comply with the 30-day time limit in K.S.A. 2017 Supp. 60-1501(b) or failed to demonstrate that he exhausted his administrative remedies.

The only evidence that White exhausted his administrative remedies comes from a grievance in which White claimed that a guard allowed another inmate to harass him and threaten to tamper with his food. White received the Secretary of Corrections' response to his appeal of this grievance on December 15, 2015. Because White did not file his K.S.A.

13

60-1501 petition until March 14, 2016, he failed to comply with the 30-day time limit of K.S.A. 2017 Supp. 60-1501(b).

Regarding White's remaining allegations of harassment and retaliation, he fails to provide any evidence that he exhausted his administrative remedies. As a result, White failed to comply with K.S.A. 75-52,138 with respect to those allegations. The district court, therefore, was without authority to consider White's complaints of harassment and retaliation and properly dismissed those claims.

In conclusion, we hold the district court did not err by dismissing White's K.S.A. 60-1501 petition.

Affirmed.